## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

HARLEYSVILLE INSURANCE
COMPANY

                  Plaintiff,

   vs.

DR. ZIJAD SABOVIC, M.D.,
DEMSA INTERNATIONAL HAIR
SOLUTION LLC, and
NEWTOWN SAVINGS BANK

                Defendants.

Civil Action No.:

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff HARLEYSVILLE INSURANCE COMPANY (hereinafter referred to as "Harleysville"), by and through its undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     In this action, Harleysville seeks a declaration that there is no coverage afforded to DR. ZIJAD SABOVIC, M.D. and DEMSA INTERNATIONAL HAIR SOLUTION LLC (collectively, the "Insureds") under a certain insurance policy issued by Harleysville for any claims relating to a freeze-up water loss that occurred at 251 Main Street, Westport, Connecticut on or about December 25, 2017.

2.     Harleysville issued to the Insureds a property insurance policy bearing Policy Number BOP00000017188V, effective for a policy period of January 21, 2017 to January 21, 2018, which was amended mid-term to add the property located at 251 Main Street, Westport, CT 06880-2401 (the "Premises") as a scheduled location effective July 31, 2017 (the "Amended Policy"). A true and correct certified copy of the Amended Policy is attached hereto and incorporated herein by reference as **Exhibit 1.**

3.      On or about August 10, 2018, Harleysville issued a written coverage determination that based upon its post-loss investigation, the Amended Policy did not afford coverage for any claims relating to the freeze-up water loss that occurred on or about December 25, 2017.  A true and correct copy of Harleysville's coverage determination dated August, XX, 2018 is attached hereto and incorporated herein by reference as **Exhibit 2.**

4.      Harleysville seeks by this litigation to confirm that no coverage exists under the Amended Policy for any claims relating to the freeze-up water loss that occurred on or about December 25, 2017.

## THE PARTIES

5.      Plaintiff Harleysville Insurance Company ("Harleysville") is an insurance company incorporated in and with its principal place of business in Pennsylvania.  Harleysville is a wholly owned subsidiary of Nationwide Mutual Insurance Company.

6.      Defendant Dr. Zijad Sabovic, M.D. ("Dr. Sabovic") is an adult individual and a resident of the State of Connecticut.

7.      Defendant Demsa International Hair Solution LLC ("Demsa") is a Connecticut limited liability company with its principal place of business in Connecticut.

8.      Upon information and belief, Dr. Sabovic is the sole member, officer and owner of Demsa.

9.      Defendant Newtown Savings Bank ("Newtown Savings") is a local community bank formed in and with its principal place of business in Connecticut.

10.     Upon information and belief Newtown Savings has an interest in the Premises as a lienholder and is named in the Amended Policy as a mortgagee of the Premises.

## STATEMENT OF JURISDICTION

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in the District of Connecticut under 28 U.S.C. § 1391, because all Defendants and the location of the loss for which coverage is sought under the Amended Policy are located within this District.

## FACTUAL BACKGROUND

### Purchase of the 251 Main Street Property

13.     The Premises consists of a large Victorian style home with a modern addition that is designed for mixed use as both a medical office and personal residence.

14.     On or about May 10, 2017, Dr. Sabovic entered into an Agreement of Sale to purchase the Premises for the sum of $1,195,000.00.

15.     On or about June 6, 2017, at the conclusion of the due diligence period provided for in the Agreement of Sale, Dr. Sabovic entered into an Amended Agreement of Sale which reduced the purchase price by $50,000.00 to $1,145,000.00, with all other terms remaining the same.

16.     On or about July 19, 2017, Dr. Sabovic formed and registered in the State of Connecticut a domestic limited liability company known as "Demsa International Hair Solution LLC."

17.     On or about July 31, 2017, Dr. Sabovic purchased the Premises through Demsa with financing provided by Newtown Bank.

18.     Upon information and belief, the Insureds never used the Premises as a personal residence at any time after it was purchased and prior to the date of loss.

19.     Upon information and belief, the Insureds never used the Premises for a medical practice at any time after it was purchased and prior to the date of loss.

20.     Upon information and belief, the Insureds never rented all or parts of the Premises at any time after it was purchased and prior to the date of loss.

21.     Upon information and belief, the Premises remained vacant and unoccupied at all relevant times following the Insureds' purchase of the Premises and up to the date of loss.

**Amendment of the Harleysville Policy**

22.     Harleysville issued to Dr. Sabovic a policy of insurance bearing Policy Number BOP00000017188V, effective for a renewal policy period of January 21, 2017 to January 21, 2018, insuring a single property located at 3000 Park Avenue, Bridgeport, Connecticut (the "Policy").

23.     In conjunction with the purchase of the Premises, Dr. Sabovic requested that the Policy be amended to add coverage for the Premises, to coincide with the closing date of July 31, 2017.

24.     Effective July 31, 2017, Harleysville amended the Policy pursuant to Dr. Sabovic's request and issued the Amended Policy.

25.     The Amended Policy included the following relevant modifications:  (1) a new scheduled location identified as "Premises 002,  Building 001" for the location "251 Main Street, Westport, CT 06880-2401" with "Building" limits of $1,200,000, "Business Personal Property" limits of $5,000, and a deductible of $1,000; (2) a new named insured identified as "Demsa International Hair Solution LLC;" and (3) a new mortgagee identified as "Newtown Savings Bank ISAOA/ATIMA" with respect to "Loc#2 Bld #1."

**The Loss**

26.     Upon information and belief, Dr. Sabovic discovered active water flowing throughout the interior of the Premises at approximately 5:00 p.m. on December 25, 2017.

27.     Unable to turn off the water supply to the Premises, Dr. Sabovic called 911 to seek assistance.

28.     Shortly thereafter, the Westport Fire Department arrived at the Premises and successfully located the water supply shutoff value in the basement.

29.     On or about December 27, 2017, Dr. Sabovic reported to Harleysville that a freeze-up water loss was discovered at the Premises on December 25, 2017.

30.     Harleysville assigned the loss claim number 502551-GG.

31.     Harleysville then proceed to conduct a prompt, thorough and timely investigation of the reported loss.

32.     Harleysville's investigation identified two sources of water on the third floor of the Premises: two burst water lines located under a kitchen sink, and a burst shower mixing valve.

33.     Harleysville's investigation determined that freezing conditions in the interior of the Premises caused the aforementioned water lines and shower mixing valve to freeze and consequently burst.

34.     Harleysville's investigation further identified a number of other plumbing pipes throughout the Premises that showed evidence of damage due to freezing conditions, including split lines, burst seams and separated joints.

**Heating System at the Premises**

35.     As part of its investigation of the claim, Harleysville inspected the heating system at the Premises, which is comprised of a seven zone radiant heating system supplied by a single, 30+ year-old Weil McLain oil fueled water boiler located in the basement.

36.     The boiler is also responsible for providing domestic hot water for the Premises.

37.     During the course of Harleysville's investigation, the boiler was tested and found to operate normally and generate hot water when turned on.

38.     Heating oil is supplied to the boiler by two 330-gallon storage tanks, also located in the basement of the Premises.

39.     The effective storage capacity of the two 330-gallon heating oil storage tanks is 600 gallons of heating oil because each storage tank requires approximately 30-gallons of air space when full.

40.     During the course of Harleysville's investigation, the gauges on the storage tanks were inspected and tested at the same time and found to display accurate readings.

41.     An inspection conducted on January 10, 2018 determined that the two 330-gallon heating oil storage tanks indicated they were 75% full, or contained approximately 495 gallons of heating oil.

<strong>Heating Oil Consumption at the Premises</strong>

42.     As part of its investigation of the claim, Harleysville obtained the heating oil delivery records for the Premises from December of 2015 through the date of loss on December 25, 2017.

43.     The last time the heating oil tanks were filled at the Premises was on June 6, 2017.

44.     No additional heating oil was delivered to the Premises after June 6, 2017 and prior to the date of loss on December 25, 2017.

45.     Based on the historical heating oil delivery records for the Premises, Harleysville's consultant calculated the oil consumption rate of the boiler system.

46.     Harleysville's consultant determined that the average daily heating oil consumption of the boiler at the Premises for domestic hot water production alone is approximately 1.59 gallons of heating oil per day.

47.     Harleysville's consultant determined that the heating system efficiency at the Premises is approximately 2.12 heating degree days (HDD) per gallon of heating oil.

48.     Based upon the average daily heating oil consumption, the boiler is estimated to have consumed 87.45 gallons between June 6, 2017 and July 31, 2017 for domestic hot water production.

49.     As of July 31, 2017, the date on which Dr. Sabovic purchased the Premises, there would have been an estimated 512.55 gallons of heating oil in the storage tanks.

50.     It was determined that there was approximately 495 gallons of heating oil remaining in the heating oil storage tanks after the loss.

51.     Between August 1, 2017 and December 25, 2017 an estimated 17.55 gallons of heating oil were used at the Premises.

52.     Based upon the heating system's efficiency, to maintain 60 degree heat at the Premises between August 1, 2017 and December 25, 2017 would require an estimated 514.62 gallons of heating oil.

53.     Based upon the heating system efficiency, to maintain 60 degree heat at the Premises between December 1, 2017 and December 25, 2017 would require an estimated 264.66 gallons of heating oil.

54.     Harleysville's investigation concluded that the heating system at the Premises was not activated in the cold-weather months of fall and winter, as evidenced by the lack of heating oil consumption by the boiler.

### Harleysville's Coverage Determination

55.     After completing its investigation, Harleysville timely issued its coverage determination to the Insureds on August 10, 2018.

56.     For the reasons set forth therein, Harleysville determined that the Amended Policy did not afford coverage for the December 25, 2017 freeze-up water loss because the Amended Policy's frozen plumbing exclusion applies to vitiate coverage.

57.     The Amended Policy's frozen plumbing exclusion specifically bars coverage for loss or damage arising from "water… that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing."

58.     The Insureds' claim is for damage from water originating from the plumbing system and caused by freezing conditions.

59.     The Insureds' claim does not entail any loss or damage caused by water originating from any fire protective systems.

60.     The claim falls squarely within the scope of the frozen plumbing exclusion and is the precise type of peril for which coverage is barred.

61.     The Policy's frozen plumbing exclusion also contains an exception which preserves coverage if "(1) you do your best to maintain heat in the building or structure; or (2) you drain the equipment and shut off the supply if the heat is not maintained."

62.     The plumbing system at the Premises was not drained of water prior to the loss.

63.     The water supply was not shut off at the Premises prior to the loss.

64.     The Insureds did not do their best to maintain heat at the Premises prior to the loss.

65.     The Insureds failed to maintain heat at the Premises prior to the loss.

66.     The Insureds failed to turn on the heating system at the Premises prior to the loss.

67.     The Insureds failed to monitor the heating system to make sure that heat was maintained at the Premises prior to the loss.

68.     As a direct and proximate result of the Insureds' failure to maintain heat at the Premises, portions or the plumbing system froze and burst, resulting in water damage.

69.     The Amended Policy's frozen plumbing exclusion therefore applies to vitiate coverage for the loss that occurred on December 25, 2017.

## COUNT I – DECLARATORY JUDGMENT

70.     Harleysville incorporates the averments set forth in the preceding paragraphs of its Complaint as if set forth at length here.

71.     The Amended Policy provides in relevant part, coverage as follows:

**SECTION I – PROPERTY**

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

* * * *

**3. Covered Causes Of Loss**

Risks of direct physical loss unless the loss is:

**a.** Excluded in Paragraph **B.** Exclusions in Section **I**; or

**b.** Limited in Paragraph **4.** Limitations in Section **I.**

* * * *

**B. Exclusions**

* * * *

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \* \*

**e. Frozen Plumbing**

> Water, other liquids, powder or molten material that leaks or
> flows from plumbing, heating, air conditioning or other
> equipment (except fire protective systems) caused by or resulting
> from freezing, unless:
>
> **(1)** You do your best to maintain heat in the building or
> structure; or
>
> **(2)** You drain the equipment and shut off the supply if the heat is
> not maintained.

72.     Harleysville's investigation revealed that the subject loss was caused by a peril

expressly excluded pursuant to the Amended Policy's frozen plumbing exclusion.

73.     Harleysville is entitled to a declaration that the Amended Policy does not cover any

loss or damage arising from the subject loss at the Premises that occurred on December 25, 2017.

WHEREFORE, Harleysville Insurance Company respectfully requests that this Honorable

Court enter judgment in its favor and against Defendants Zijiad Sabovic MD and Demsa

International Hair Solution LLC, together with any additional relief the Court deems appropriate,

and enter a judgment in favor of Harleysville declaring:

(1)     that the Insureds' claim for damages resulting from the freeze-up water loss
discovered on December 25, 2017 is not covered by the Amended Policy;
and

(2)     that Harleysville is entitled to such other relief that the Court may deem just
and appropriate, including but not limited to attorneys' fees and costs.

Respectfully submitted this 10th day of August, 2018,

PLAINTIFF: HARLEYSVILLE INSURANCE CO.

By:     _Michael Byrne_

Michael J. Byrne
Byrne & O'Neill, LLP
112 Prospect Street
Stamford, CT  06901
Tel: 203-327-7541
Bar No. ct19438