**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **HARLEYSVILLE INSURANCE** | : | **CIVIL ACTION NO.** |
| **COMPANY** | : | **3:18-cv-01347-AWT** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ZIJAD SABOVIC, ET AL** | : | |
| | : | |
| **Defendants** | : | **July 19, 2019** |

### DEFENDANTS' / COUNTERCLAIMANTS' MOTION FOR LEAVE TO AMEND COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and U.S. District Court, District of Connecticut Local Rule 7(f), the Defendants / Counterclaimants, Zijad Sabovic and Demsa International Hair Solution, LLC, respectfully move for leave to amend their counterclaim dated October 26, 2018 as attached hereto, for the purpose of re-alleging the Second and Fourth Counts of said counterclaim, alleging bad faith and unfair insurance practices, respectively.

This motion is prompted by the Court's June 28, 2019 decision (ECF 36) dismissing the Second, Third and Fourth Counts of the subject counterclaim, without prejudice. As the Court is aware, the Second and Fourth Counts of the subject counterclaim were dismissed due to an insufficiency of the allegations set forth therein and not due to any defect in jurisdiction, service or process.  The Court may note that the Defendants / Counterclaimants are not seeking to re-allege their cause of action for negligence, which this Court has held is

barred by the Economic Loss Doctrine. Accordingly, the Fourth and Fifth Counts of the subject counterclaim have been re-alleged as the Third and Fourth Counts of the proposed amended counterclaim. The proposed amended counterclaim and a redlined version of the original counterclaim are hereto.

The undersigned inquired of opposing counsel regarding this Motion for Leave to Amend the Counterclaim and Plaintiff's counsel objects to this Motion.

**WHEREFORE,** the Defendants/Counterclaimants respectfully move the Court for leave to amend their counterclaim of October 26, 2018.

DEFENDANTS / COUNTERCLAIMANTS
ZIJAD SABOVIC and
DEMSA INTERNATIONAL HAIR
SOLUTIONS LLC

By:  /s/ Michael J. LeMoult
Michael J. LeMoult
Biller, Sachs, Zito & LeMoult
2750 Whitney Avenue
Hamden, CT  06518
Tel: (203) 281-1717
Fax: (203) 281-7887
attorneys@bszllaw.com
Fed Bar No. ct29545

## **CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing document was filed electronically and sent by e-mail to all parties by operation of the Court's electronic filing system as follows:

Robert D. Laurie  rlaurie@sgllawgroup.com
Lucas Bennett Rocklin  lrocklin@npmlaw.com
Heather L McCoy  hmccoy@sgllawgroup.com

            /s/ ct29545
            Michael J. LeMoult

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HARLEYSVILLE INSURANCE | : | CIVIL ACTION NO. |
| COMPANY | : | 3:18-cv-01347-AWT |
|      Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ZIJAD SABOVIC, ET AL | : | |
| | : | |
|      Defendants | : | July 19, 2019 |

## <u>AMENDED COUNTERCLAIM</u>

<u>FIRST COUNT:</u>

1.     At all times relevant hereto, Defendant/Counterclaimant, DEMSA INTERNATIONAL HAIR SOLUTIONS, LLC , was and remains owner of property located at 251 Main Street in Westport, Connecticut (hereinafter "the subject property").

2.     At all times relevant hereto, Defendant/Counterclaimant, ZIJAD SABOVIC was an remains the sole member of Defendant DEMSA INTERNATIONAL HAIR SOLUTIONS, LLC.

3.     The Plaintiff, HARLEYSVILLE INSURANCE COMPANY (hereinafter "the Plaintiff"), was and remains an insurance company authorized to do business within the State of Connecticut.

4.     In December of 2017, the subject property was insured under an insurance policy issued by Defendant which carried policy number BOP00000017188V (hereinafter

"the subject policy") and which listed Defendants/Counterclaimants DEMSA

INTERNATIONAL HAIR SOLUTIONS, LLC and ZIJAD SABOVIC (hereinafter "the

Defendants") as insureds.

5.      On or about December 25, 2016, while said policy was in full force and effect,

the subject property suffered a loss by virtue of water escaping from pipes located within the

subject property.

6.      Thereafter, the Defendants submitted a claim for the damage to the subject

property pursuant to the subject policy.

7.      Despite demand, the Plaintiff has failed and refused to pay Defendants for

their loss.

**SECOND COUNT:**

1 – 7.   Paragraphs 1 through 7 of the First Count are hereby incorporated and made

paragraphs 1 through 7 of the Second Count.

8.      At all relevant times mentioned herein, the Plaintiff was under an obligation to

act in good faith and to treat its insureds, including the Defendants, fairly and reasonably.

9.      Throughout the Plaintiff's investigation and adjustment of the Defendants'

claim, the Plaintiff acted in bad faith and did so in one or more of the following ways:

        a.      The Plaintiff, both in its own right and through its agents, servants and
employees breached its duty to adjust and negotiate the Defendants'
claim in good faith, and instead, collected facts in an effort to support
delay and denial. Specifically, Plaintiff based its denial of Defendants'
claim on records and information pertaining to the oil consumption at

the subject property prior to Defendants' purchase which were irrelevant, and Plaintiff intentionally ignored facts illustrating that the oil consumption had changed based on the use and occupancy of the subject property. In addition, Plaintiff failed to consider the effect of the extreme temperatures on the subject property on the date of loss;

b.  The Plaintiff, both in its own right and through its agents, servants and employees unduly delayed the investigation and adjustment of Defendants' loss; Specifically, Defendant waited more than four months to take any recorded statement or Examination Under Oath of the Defendants' while claiming that an Examination Under Oath was necessary for Plaintiff to make any determination as to coverage for Defendants' loss. After an Examination Under Oath was completed, Defendant then waited more than two months before issuing a declination letter for Defendants' claim. Plaintiff's actions were intentionally aimed at delaying resolution of Defendants' claim;

c.  The Plaintiff, both in its own right and through its agents, servants and employees, misled the Defendants into believing their claim was going to be timely paid with the intention of forcing the Defendants to comply with policy requirements when the Plaintiff had no intention of timely paying the Defendants for their loss and damages. Specifically, Plaintiff requested voluminous documentation and required Defendants' representative to participate in an Examination Under Oath which had no bearing on Plaintiff's coverage determination;

d.  During the course of the adjustment of the Defendants' claim, the Defendants made numerous requests for advances, production of reports or information, copies of statements, and for advice and cooperation with respect to policy conditions, and said requests were ignored, or not responded to in a prompt fashion, by the Plaintiff with the intention of prejudicing the Defendants in the presentation of their claim; Specifically, Defendants' and their representatives requested reports from the Plaintiff with regard to engineers and building consultants, who were provided access to the subject property to investigate Defendants' claim, and said requests were either denied or ignored, with the intent to prejudice the Defendants in the presentation of their claim.

e.     The Plaintiff, both in its own right and through its agents, servants and employees intentionally and maliciously lead the Defendants to believe it was giving appropriate and reasonable consideration to the Defendants' claim as it relates to the coverages provided under the policy when, in fact, it was the Plaintiff's intention to interpose obstacles to prevent a timely resolution of the claim and to support an unduly narrow interpretation of the policy. Specifically, Plaintiff requested the Defendants produce voluminous documentation, not in Defendants' possession, before Plaintiff would make any determination as to Defendants' claims. Said documentation was not relevant to Defendants' claim nor Plaintiff's determination of coverage, and was requested in an effort to delay Defendants' claim and interpose obstacles to resolution of said claim.

10.    As a result of the Plaintiff's wrongful conduct and bad faith, the Defendants have been forced to expend money and incur costs in the filing of this lawsuit, have lost monies due under the policy, and have otherwise been damaged and harmed.

**THIRD COUNT:**

1 – 7.  Paragraphs 1 through 7 of the First Count are hereby incorporated and made paragraphs 1 through 7 of the Third Count.

8 – 10. Paragraphs 8 through 10 of the Second Count are hereby incorporated and made paragraphs 8 through 10 of the Third Count.

11.    The Plaintiff, its assignees, subsidiaries, successors and holding companies is engaged in the conduct of a trade or commerce in the State of Connecticut, specifically, the business of insurance.

12.     At all relevant times mentioned herein, the Plaintiff, its assignees, subsidiaries, successors and holding companies was prohibited by Connecticut General Statutes §41-110 et. seq. from engaging in unfair and deceptive acts or practices in the conduct of its business.

13.     The Plaintiff, its assignees, subsidiaries, successors and holding companies has engaged in unfair and deceptive acts and practices prohibited by Connecticut General Statutes §42-110 et. seq. and has violated Connecticut General Statutes §38a-815 et. seq.

14.     The Plaintiff, its assignees, subsidiaries, successors and holding companies has and continues to commit the acts referred to below as to the Defendants and as to other insureds and policy holders of the Plaintiff and its holding companies, affiliates or subsidiaries with such frequency as to constitute a general business practice of insurance misconduct in violation of Connecticut General Statutes §38a-815 et. seq. by:

a.     Failing to acknowledge and act with reasonable promptness upon communications with respect to the Defendants' claim and with respect to the claims of other policyholders which arise under the insurance policies issued by the Plaintiff, its assignees, subsidiaries, successors and holding companies. Specifically, failing to timely take recorded statements or Examinations Under Oaths of insureds and failing to make timely coverage determinations after all relevant information has been provided to the Plaintiff.

b.     Conducting an investigation with a view towards ignoring evidence or information which would tend to show that the claim should be paid and honored with respect to the Defendants' claim and with respect to the claims of other policyholders which arise under the insurance

policies issued by the Plaintiff, its assignees, subsidiaries, successors and holding companies. Instead, either creating, fabricating or trying to obtain information to deny or delay the payment of the claims. Specifically, with respect to claims involving the freezing of pipes in an insured property, Plaintiff has intentionally ignored relevant weather information, information pertaining to the age and condition of heating systems and information pertaining to the use and occupancy of the subject properties, as it relates to the Defendants' claim and the claims of other policyholders.

c. Failing to comply with reasonable requests for information requested by the Plaintiffs or their agents and other insureds. Specifically, refusing to produce information generated by engineers and building consultants investigating the claim of the Defendants as well as other policyholders, to the detriment of the insureds.

d. Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear. Specifically, intentionally causing unnecessary delays in the investigation and adjustment of Defendants' claim, as well as the claims of other insureds, by requesting information and documents which are not relevant to Plaintiff's coverage determination.

e. Compelling insureds to institute litigation to recover amounts due under insurance policies.

f. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for delay of the Defendants' claim or claims of other policyholders. Specifically, intentionally causing delays in the repair or reconstruction of damaged properties by requiring Defendants and other policyholders to preserve damage for extended period of time.

15. The Plaintiff has and continues to commit the acts referred to above as to the Defendants and as to other insureds and policyholders of the Plaintiff and its holding companies, affiliates or subsidiaries with such frequency as to constitute a general business

practice of insurance misconduct in violation of Connecticut General Statutes §38a-815 <u>et.</u> <u>seq.</u> as evidenced by the allegations contained in: <u>Custren v. Harleysville Ins. Co.</u>, 568 A. 2d 639 - Pa: Supreme Court 1990; <u>Harleysville Ins. Co. v. Holding Funeral Home, Inc.</u>, No. 1:15CV00057 (W.D. Va); <u>Klinger's Trading, Inc. v. Harleysville Insurance Company</u>, 1:17-CV-01891 (N.D., Ga., Atlanta Div.); <u>Gray Brothers Inc. v. Harleysville Insurance Co.</u>, No. 86-1634 (Common Pleas Court of Montgomery County, Pennsylvania, 1987); and <u>Walsh v. Harleysville Preferred Insurance Company</u>, 3:180-cv-0042-SRU (D. Conn., 2018).

16.     The Plaintiff's general business practice of insurance misconduct is further seen in the actions and lawsuits filed against the Plaintiff, its assignees, subsidiaries, successors and holding companies and by numerous complaints on file with the State of Connecticut,the State of Massachusetts, and the State of Pennsylvania Insurance Departments concerning the Defendant, its assignees, subsidiaries, successors and holding companies including findings of delay by said Departments.

17.     As a result of the Plaintiff's actions as set forth above, the Defendants have suffered an ascertainable loss of money and property and has otherwise been harmed.

**FOURTH COUNT:**

1 – 7.   Paragraphs 1 through 7 of the First Count are hereby incorporated and made paragraphs 1 through 7 of the Fourth Count.

8.     The subject policy provides, in pertinent part:

**B. Exclusions.**

   **2. We will not pay for loss or damage caused by or resulting from any of the following:**

…

   **e. Frozen Plumbing**

   Water, other liquids, powder or molten material that leaks or flows from the plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:
   **(1) You do your best to maintain heat in the structure; or**

   **(2) You drain the equipment and shut off the supply if heat is not maintained.**

9.    The subject policy also provides, in pertinent part:

**8. Vacancy**

   **a. Description Of Terms**

   **(1) As used in this Vacancy Condition, the term buildings and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:**

   **(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.**

   **(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:**

   **(i) Is not rented or leased to a lessee or sub-lessee to conduct its customary operations; and/or**

> **(ii) Is not used by the building owner to conduct customary operations.**
>
> **(2) Buildings under construction or renovation are not considered vacant.**
>
> **b. Vacancy Provisions**
>
> **It the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:**
>
> **(1) We will not pay for any loss or damage caused by any of the following even if they are a Covered Cause of Loss:**
>
> > **(a)   Vandalism;**
> > **(b)   Sprinkler leakage, unless you have protected the system against freezing;**
> > **(c)   Building glass breakage;**
> > **(d)    Water damage;**
> > **(e)   Theft; or**
> > **(f)   Attempted theft.**
>
> **(2) With respect to Covered Causes of Loss other than those listed in Paragraphs 1(a) through 1(f) listed above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.**

10.     Plaintiff has denied coverage for the Defendants' loss citing the subject policy exclusions set forth in Paragraphs 8 and 9.

11.     An actual controversy exists between the Plaintiff and the Defendants as to the meaning and effect of the insurance policy issued by the Plaintiff to the Defendants including the above-referenced provisions.

12.     This controversy creates a substantial question and dispute.

13.     The Defendants respectfully requests the Court declare that the Plaintiff is obligated to afford coverage and pay for the Defendants' property damages pursuant to the subject policy.

**WHEREFORE**, the Defendants/Counterclaimants claim:

1. Compensatory damages.

2. Punitive damages.

3. Costs of litigation, including attorneys' fees as exemplary damages.

4. Damages pursuant to Connecticut General Statutes §42-110 <u>et</u>. <u>seq</u>. and §38a-816 <u>et</u>. <u>seq</u>.

5. Interest.

6. A declaratory judgment finding that the Plaintiff must afford coverage for the Defendants' loss and damage.

7. Such other and further relief as may be deemed fair, just and equitable.

DEFENDANTS / COUNTERCLAIMANTS
ZIJAD SABOVIC and
DEMSA INTERNATIONAL HAIR
SOLUTIONS LLC

By:  /s/ Michael J. LeMoult
Michael J. LeMoult
Biller, Sachs, Zito & LeMoult
2750 Whitney Avenue
Hamden, CT  06518
Tel: (203) 281-1717
Fax: (203) 281-7887
attorneys@bszllaw.com
Fed Bar No. ct29545

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **HARLEYSVILLE INSURANCE** | : | **CIVIL ACTION NO.** |
| **COMPANY** | : | **3:18-cv-01347-AWT** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ZIJAD SABOVIC, ET AL** | : | |
| | : | |
| **Defendants** | : | **July 19, 2019**~~October 26, 2018~~ |

**AMENDED COUNTERCLAIM**
**(REDLINED COPY)**

**FIRST COUNT:**

1.      At all times relevant hereto, Defendant/Counterclaimant, DEMSA INTERNATIONAL HAIR SOLUTIONS, LLC , was and remains owner of property located at 251 Main Street in Westport, Connecticut (hereinafter "the subject property").

2.      At all times relevant hereto, Defendant/Counterclaimant, ZIJAD SABOVIC was an remains the sole member of Defendant DEMSA INTERNATIONAL HAIR SOLUTIONS, LLC.

3.      The Plaintiff, HARLEYSVILLE INSURANCE COMPANY (hereinafter "the Plaintiff"), was and remains an insurance company authorized to do business within the State of Connecticut.

4.      In December of 2017, the subject property was insured under an insurance policy issued by Defendant which carried policy number BOP00000017188V (hereinafter

"the subject policy") and which listed Defendants/Counterclaimants DEMSA

INTERNATIONAL HAIR SOLUTIONS, LLC and ZIJAD SABOVIC (hereinafter "the

Defendants") as insureds.

5.      On or about December 25, 2016, while said policy was in full force and effect,

the subject property suffered a loss by virtue of water escaping from pipes located within the

subject property.

6.      Thereafter, the Defendants submitted a claim for the damage to the subject

property pursuant to the subject policy.

7.      Despite demand, the Plaintiff has failed and refused to pay Defendants for

their loss.

**SECOND COUNT:**

1 – 7.   Paragraphs 1 through 7 of the First Count are hereby incorporated and made

paragraphs 1 through 7 of the Second Count.

8.      At all relevant times mentioned herein, the Plaintiff was under an obligation to

act in good faith and to treat its insureds, including the Defendants, fairly and reasonably.

9.      Throughout the Plaintiff's investigation and adjustment of the Defendants'

claim, the Plaintiff acted in bad faith and did so in one or more of the following ways:

        a.      The Plaintiff, both in its own right and through its agents, servants and
employees breached its duty to adjust and negotiate the Defendants'
claim in good faith, and instead, collected facts in an effort to support
delay and denial. Specifically, Plaintiff based its denial of Defendants'
claim on records and information pertaining to the oil consumption at

the subject property prior to Defendants' purchase which were irrelevant, and Plaintiff intentionally ignored facts illustrating that the oil consumption had changed based on the use and occupancy of the subject property. In addition, Plaintiff failed to consider the effect of the extreme temperatures on the subject property on the date of loss;

b.     The Plaintiff, both in its own right and through its agents, servants and employees unduly delayed the investigation and adjustment of Defendants' loss; Specifically, Defendant waited more than four months to take any recorded statement or Examination Under Oath of the Defendants' while claiming that an Examination Under Oath was necessary for Plaintiff to make any determination as to coverage for Defendants' loss. After an Examination Under Oath was completed, Defendant then waited more than two months before issuing a declination letter for Defendants' claim. Plaintiff's actions were intentionally aimed at delaying resolution of Defendants' claim;

c.     The Plaintiff, both in its own right and through its agents, servants and employees, misled the Defendants into believing their claim was going to be timely paid with the intention of forcing the Defendants to comply with policy requirements when the Plaintiff had no intention of timely paying the Defendants for their loss and damages.; Specifically, Plaintiff requested voluminous documentation and required Defendants' representative to participate in an Examination Under Oath which had no bearing on Plaintiff's coverage determination;

d.     During the course of the adjustment of the Defendants' claim, the Defendants made numerous requests for advances, production of reports or information, copies of statements, and for advice and cooperation with respect to policy conditions, and said requests were ignored, or not responded to in a prompt fashion, by the Plaintiff with the intention of prejudicing the Defendants in the presentation of their claim; Specifically, Defendants' and their representatives requested reports from the Plaintiff with regard to engineers and building consultants, who were provided access to the subject property to investigate Defendants' claim, and said requests were either denied or ignored, with the intent to prejudice the Defendants in the presentation of their claim.

e. ~~The Plaintiff, both in its own and right and through its agents, servants and employees intentionally and maliciously either failed to respond or failed to timely respond to the Defendants' communications and requests for information thereby prejudicing the Defendants in the presentation of their claim;~~

<u>e.</u>~~f.~~   The Plaintiff, both in its own right and through its agents, servants and employees intentionally and maliciously lead the Defendants to believe it was giving appropriate and reasonable consideration to the Defendants' claim as it relates to the coverages provided under the policy when, in fact, it was the Plaintiff's intention to interpose obstacles to prevent a timely resolution of the claim and to support an unduly narrow interpretation of the policy. <u>Specifically, Plaintiff requested the Defendants produce voluminous documentation, not in Defendants' possession, before Plaintiff would make any determination as to Defendants' claims. Said documentation was not relevant to Defendants' claim nor Plaintiff's determination of coverage, and was requested in an effort to delay Defendants' claim and interpose obstacles to resolution of said claim.</u>

10.     As a result of the Plaintiff's wrongful conduct and bad faith, the Defendants have been forced to expend money and incur costs in the filing of this lawsuit, have lost monies due under the policy, and have otherwise been damaged and harmed.

**~~THIRD COUNT:~~**

~~1 - 7.   Paragraphs 1 through 7 of the First Count are hereby incorporated and made paragraphs 1 through 7 of the Third Count.~~

~~8 - 10.  Paragraphs 8 through 10 of the Second Count are hereby incorporated and made paragraphs 8 through 10 of the Third Count.~~

~~11.    The Plaintiff was negligent in the adjustment and handling of the Defendants' claim in that:~~

> ~~a.    It negligently hired, monitored and/or supervised its agents, servants and employees who participated in the adjustment and evaluation of the Defendants' claim.~~

> ~~b.    It failed to timely and properly estimate the damages to the subject property.~~

> ~~c.    It provided the Defendants with incorrect information pertaining to the subject policy's provisions and limitations.~~

> ~~d.    The Plaintiff, through its agents, servants and employees, delayed the adjustment of the Defendants' claim.~~

> ~~e.    It negligently created issues in an effort to try to find a basis in the policy to delay or deny coverage.~~

~~12.    As a result of the Plaintiff's negligence as set forth above, the Defendants have been damaged and harmed.~~

**~~FOURTH~~ THIRD COUNT:**

1 – 7.  Paragraphs 1 through 7 of the First Count are hereby incorporated and made paragraphs 1 through 7 of the ~~Fourth~~ Third Count.

8 – 10. Paragraphs 8 through 10 of the Second Count are hereby incorporated and made paragraphs 8 through 10 of the ~~Fourth~~ Third Count.

~~11-12. Paragraphs 11 and 12 of the Third Count are hereby incorporated and made paragraphs 11 and 12 of the Fourth Count.~~

1~~1~~3.     The Plaintiff, its assignees, subsidiaries, successors and holding companies is engaged in the conduct of a trade or commerce in the State of Connecticut, specifically, the business of insurance.

1~~2~~4.     At all relevant times mentioned herein, the Plaintiff, its assignees, subsidiaries, successors and holding companies was prohibited by Connecticut General Statutes §41-110 et. seq. from engaging in unfair and deceptive acts or practices in the conduct of its business.

1~~3~~5.     The Plaintiff, its assignees, subsidiaries, successors and holding companies has engaged in unfair and deceptive acts and practices prohibited by Connecticut General Statutes §42-110 et. seq. and has violated Connecticut General Statutes §38a-815 et. seq.

1~~4~~6.     The Plaintiff, its assignees, subsidiaries, successors and holding companies has and continues to commit the acts referred to below as to the Defendants and as to other insureds and policy holders of the Plaintiff and its holding companies, affiliates or subsidiaries with such frequency as to constitute a general business practice of insurance misconduct in violation of Connecticut General Statutes §38a-815 et. seq. by:

       a.     ~~Misrepresenting pertinent facts and insurance policy provisions relating to coverages at issue in connection with the subject policy and as to other insureds and other policyholders of the Plaintiff, its assignees, subsidiaries, successors and holding companies.~~

       a.     Failing to acknowledge and act with reasonable promptness upon communications with respect to the Defendants' claim and with respect to the claims of other policyholders which arise under the insurance policies issued by the Plaintiff, its assignees, subsidiaries,

successors and holding companies. Specifically, failing to timely take recorded statements or Examinations Under Oaths of insureds and failing to make timely coverage determinations after all relevant information has been provided to the Plaintiff.

b.c. Conducting an investigation with a view towards ignoring evidence or information which would tend to show that the claim should be paid and honored with respect to the Defendants' claim and with respect to the claims of other policyholders which arise under the insurance policies issued by the Plaintiff, its assignees, subsidiaries, successors and holding companies. Instead, either creating, fabricating or trying to obtain information to deny or delay the payment of the claims. Specifically, with respect to claims involving the freezing of pipes in an insured property, Plaintiff has intentionally ignored relevant weather information, information pertaining to the age and condition of heating systems and information pertaining to the use and occupancy of the subject properties, as it relates to the Defendants' claim and the claims of other policyholders.

c.d. Failing to comply with reasonable requests for information requested by the Plaintiffs or their agents and other insureds. Specifically, refusing to produce information generated by engineers and building consultants investigating the claim of the Defendants as well as other policyholders, to the detriment of the insureds.

d.e. Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear. Specifically, intentionally causing unnecessary delays in the investigation and adjustment of Defendants' claim, as well as the claims of other insureds, by requesting information and documents which are not relevant to Plaintiff's coverage determination.

e.f. Compelling insureds to institute litigation to recover amounts due under insurance policies.

f.g. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for delay of the Defendants' claim or claims of other policyholders. Specifically, intentionally causing delays in the repair or reconstruction of damaged

properties by requiring Defendants and other policyholders to preserve damage for extended period of time.

h.      ~~Unduly narrowly interpreting the policy provisions in an effort to delay or deny Defendants' claim instead of analyzing policy provisions with a view toward being fair and reasonable to its insureds.~~

15~~7~~.      The Plaintiff has and continues to commit the acts referred to above as to the Defendants and as to other insureds and policyholders of the Plaintiff and its holding companies, affiliates or subsidiaries with such frequency as to constitute a general business practice of insurance misconduct in violation of Connecticut General Statutes §38a-815 et. seq. as evidenced by the allegations contained in: ~~Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc., 10 F. Supp. 3d 252, 259 (D. Conn. 2014); Hayes v. Harleyville Mut. Ins. Co., 2003 WL 22839277 (Dec. 1, 2003); Zimmerman v. Harleysville Mut. Ins. Co., 2004 WL 2190363 (Sept. 30, 2004); Nationwide Mut. Fire Ins. Co. v. Smith, 174 F.R.D. 250, 253 (D. Conn. 1997); and Brochstein v. Nationwide Mut. Ins. Co., 448 F.2d 987, 991 (2d Cir. 1971); Halloran, et al v. Harleysville Preferred Ins. Co., No. 16-0133 VAB (D. Conn. 2016); and Dalton v. Harleysville Worcester Mut. Ins. Co., 557 F.3d 88 (2d Cir. 2009).~~ Custren v. Harleysville Ins. Co., 568 A. 2d 639 - Pa: Supreme Court 1990; Harleysville Ins. Co. v. Holding Funeral Home, Inc., No. 1:15CV00057 (W.D. Va); Klinger's Trading, Inc. v. Harleysville Insurance Company, 1:17-CV-01891 (N.D., Ga., Atlanta Div.); Gray Brothers Inc. v. Harleysville Insurance Co., No. 86-1634 (Common Pleas Court of Montgomery

County, Pennsylvania, 1987); and Walsh v. Harleysville Preferred Insurance Company,

3:180-cv-0042-SRU (D. Conn., 2018).

16~~8~~.    The Plaintiff's general business practice of insurance misconduct is further

seen in the actions and lawsuits filed against the Plaintiff, its assignees, subsidiaries,

successors and holding companies and by numerous complaints on file with the State of

Connecticut~~, and~~ the State of Massachusetts, and the State of Pennsylvania Insurance

Departments concerning the Defendant, its assignees, subsidiaries, successors and holding

companies including findings of delay by said Departments.

17~~9~~.    As a result of the Plaintiff's actions as set forth above, the Defendants have

suffered an ascertainable loss of money and property and has otherwise been harmed.

**FOURTH ~~FIFTH~~ COUNT:**

1 – 7.   Paragraphs 1 through 7 of the First Count are hereby incorporated and made

paragraphs 1 through 7 of the ~~Fifth~~ Fourth Count.

8.    The subject policy provides, in pertinent part:

**B.  Exclusions.**

**2.  We will not pay for loss or damage caused by or resulting from
any of the following:**

**…**

**e.  Frozen Plumbing**

**Water, other liquids, powder or molten material that leaks or
flows from the plumbing, heating, air conditioning or other**

**equipment (except fire protective systems) caused by or resulting from freezing, unless:**

**(3) You do your best to maintain heat in the structure; or**

**(4) You drain the equipment and shut off the supply if heat is not maintained.**

9.      The subject policy also provides, in pertinent part:

**8.  Vacancy**

**b.  Description Of Terms**

**(3) As used in this Vacancy Condition, the term buildings and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:**

**(c)  When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.**

**(d)  When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:**

**(iii)Is not rented or leased to a lessee or sub-lessee to conduct its customary operations; and/or**

**(iv)Is not used by the building owner to conduct customary operations.**

**(4) Buildings under construction or renovation are not considered vacant.**

**b.  Vacancy Provisions**

**It the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:**

**(3)  We will not pay for any loss or damage caused by any of the following even if they are a Covered Cause of Loss:**

    **(g)  Vandalism;**
    **(h)  Sprinkler leakage, unless you have protected the system against freezing;**
    **(i)  Building glass breakage;**
    **(j)   Water damage;**
    **(k)  Theft; or**
    **(l)  Attempted theft.**

**(4)  With respect to Covered Causes of Loss other than those listed in Paragraphs 1(a) through 1(f) listed above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.**

10.  Plaintiff has denied coverage for the Defendants' loss citing the subject policy exclusions set forth in Paragraphs 8 and 9.

11.  An actual controversy exists between the Plaintiff and the Defendants as to the meaning and effect of the insurance policy issued by the Plaintiff to the Defendants including the above-referenced provisions.

12.  This controversy creates a substantial question and dispute.

13.  The Defendants respectfully requests the Court declare that the Plaintiff is obligated to afford coverage and pay for the Defendants' property damages pursuant to the subject policy.

**WHEREFORE**, the Defendants/Counterclaimants claim:

1.  Compensatory damages.

2.  Punitive damages.

3.  Costs of litigation, including attorneys' fees as exemplary damages.

4.  Damages pursuant to Connecticut General Statutes §42-110 <u>et</u>. <u>seq</u>. and §38a-816 <u>et</u>.

<u>seq</u>.

5.  Interest.

6.  A declaratory judgment finding that the Plaintiff must afford coverage for the

Defendants' loss and damage.

7.  Such other and further relief as may be deemed fair, just and equitable.


DEFENDANTS / COUNTERCLAIMANTS
ZIJAD SABOVIC and
DEMSA INTERNATIONAL HAIR
SOLUTIONS LLC

By:  /s/ Michael J. LeMoult
Michael J. LeMoult
Biller, Sachs, Zito & LeMoult
2750 Whitney Avenue
Hamden, CT  06518
Tel: (203) 281-1717
Fax: (203) 281-7887
attorneys@bszllaw.com
Fed Bar No. ct29545